# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL PAUL LINDSEY, )
    Plaintiff, )
) 02: 09-cv-1505
v. )
)
MICHAEL J. ASTRUE, )
COMMISSIONER OF SOCIAL SECURITY, )
    Defendant. )

## MEMORANDUM OPINION AND ORDER OF COURT

September 14, 2010

### I. Introduction

Plaintiff, Michael Paul Lindsey ("Plaintiff"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied his applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"), under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403; 1381-1383(f).

### II. Background

#### A. <u>Facts</u>

Plaintiff was born on June 4, 1978. (R. 33)[1]. He graduated from high school and earned a certificate in diesel mechanics. (*Id.*). Plaintiff's past relevant work experience

---

[1] The Court's recitation of relevant facts is derived from the transcript of the administrative record filed by the Commissioner as part of his answer in accordance with § 205(g) of the Act, 42 U.S.C. § 405(g), which is referred to hereinafter as ("R. _).

1

consists of recapping tires for Kraft Tire, Inc., for two (2) years and delivering newspapers for the Uniontown *Herald Standard* for approximately four (4) years. (R. 34). Plaintiff also worked as a commercial roofer for approximately a year-and-a-half, a metal fabricating laborer at a steel fabricating facility, and briefly as a car dealership maintenance worker. (R. 34, 65-66). The vocational expert testified that all these jobs are classified as medium or higher exertional work.

Plaintiff's alleged onset of his disability is August 28, 2006, due to tinnitus, possible meningitis, difficulty sleeping, numbness from his shoulders to his hands, and pain in his neck, back, fingers, and arms. (R. 111-120). The record reflects that Plaintiff has not engaged in substantial gainful work activity since his alleged onset date of disability. (R. 17).

### B. Procedural History

Plaintiff initially filed an application for SSI on December 7, 2006, and an application for DIB on December 22, 2006. (R. 109-14). Plaintiff claimed disability on both applications as of August 28, 2006. (*Id.*). Both claims were denied at the initial level of administrative review and, thereafter, Plaintiff filed a timely request for a hearing. An administrative hearing was held on June 23, 2008, before Administrative Law Judge J.E. Sullivan ("ALJ"). (R. 27-74). Plaintiff was represented by counsel and testified at the hearing. (R. 29-63). Eugene Czuczman, an impartial vocational expert ("VE"), also testified at the hearing. (R. 63-72).

On February 9, 2009, the ALJ rendered an unfavorable decision to Plaintiff in which she found that Plaintiff had the residual functional capacity to perform light work

with restrictions,[2] and therefore was not disabled as defined in the Act from August 28, 2006, through the date of her decision. (R. 15-26).

The ALJ's decision became the final decision of the Commissioner on October 5, 2009, when the Appeals Council denied Plaintiff's request for review. (R. 1-4).

On November 13, 2009, Plaintiff filed his Complaint in this Court in which he seeks judicial review of the ALJ's decision. The parties have filed cross-motions for summary judgment. Plaintiff contends that the ALJ erred as a matter of law in failing to consider and accord controlling weight to the opinion of Dr. Shahoud and improperly disregarded competent medical evidence "based on her independent review of the record." (Document No. 17). The Commissioner contends that Dr. Shahoud's opinion should not be considered by this Court because it was not received by the ALJ until after the administrative record had closed, and, alternatively, Plaintiff has failed to meet her burden of proving that Dr. Shahoud's opinion is "new evidence" which would necessitate a sentence six remand.[3] (Document No. 15). Furthermore, the Commissioner contends that the decision of the ALJ should be affirmed because it is supported by substantial evidence. (*Id.*). For the reasons that follow, the Court agrees

---

[2]  Specifically, the ALJ found that Plaintiff could perform light work with the following restrictions: no bending from the waist to the floor; must avoid concentrated exposure to loud noise; work cannot require fine hearing capability; must involve only routine / repetitive one to three step tasks, with no detailed instructions; and no more than occasional changes in the work setting. (R. 20).

[3] The sixth sentence of 42 U.S.C. § 405(g) ("sentence six remand") permits a district court to remand a case upon a showing of new evidence not incorporated into the record of the prior proceeding.

with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

### III. Legal Analysis

#### A. <u>Standard of Review</u>

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g),1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It consists of more than a scintilla of evidence, but less than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C. § 404.1520; *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186, F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

> (1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or,
> (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify as an impairment delineated in 20 C.F. R. Regulations No. 4, Suppt. P, Appendix 1, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or

equal the severity of one of these listed impairments. *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.")

In this case, the ALJ properly followed the five-step sequential evaluation process and determined that Plaintiff was not disabled within the meaning of the Act at the fifth step. (R. 24-25). In making this determination, the ALJ concluded at the first step that Plaintiff has not engaged in substantial gainful activity since August 28, 2006, the alleged onset date and, therefore, met the insured status requirement of the Act. (R. 17).

In the second step of the sequential evaluation process, the ALJ found Plaintiff to be suffering from the following severe impairments for the purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii) *et seq*, 416.921 *et seq.* : "cervical strain and cervical radiculopathy; bilateral hearing loss with tinnitus, left worse than right; major depression; and generalized anxiety disorder." (*Id.*). Although Plaintiff reported experiencing chronic tonsillitis with hypertrophy and headaches, the ALJ determined that these conditions were not severe based on the record medical evidence. (*Id.*). The ALJ concluded at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926).

Before proceeding to step four, and in accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ made the following residual functional capacity ("RFC") assessment :

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform **light work** as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except no bending from the waist to the floor; must avoid concentrated exposure to loud noise; work cannot require fine hearing capability; must involve only routine/repetitive one to three step tasks, with no detailed instruction; and no more than occasional changes in the work setting.

(R. 20) (emphasis added).

At step four of the sequential evaluation, based on the RFC assessment, the ALJ determined that Plaintiff could not return to his past relevant work, as his past relevant work experience was classified as medium to higher exertional work. (R. 25). At the fifth step of the sequential evaluation process, the ALJ determined that Plaintiff could perform light work and, therefore, was not disabled under the Act.

### B. Discussion

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3rd Cir. 1986), *cert. denied.*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

### 1. Dr. Shahoud's Assessment May Not be Considered in Reviewing the ALJ's Decision for Substantial Evidence

Plaintiff contends that the ALJ erred in failing to consider and accord controlling weight to the opinion of Dr. Shahoud of Family Behavioral Resources. (Document No. 17, 16-18). The "opinion" of Dr. Shahoud was forwarded by Plaintiff's counsel to the

ALJ on or about December 4, 2008,[4] and is actually an "Assessment of Ability to Do Work-Related Activities (Mental)," a form which is not signed and not dated. (R. 615-17). The Commissioner argues that the ALJ could not have considered Dr. Shahoud's report as it was not received by the ALJ until three months <u>after</u> the administrative record had closed. (Document No. 15, 11-12).

Based on the evidence of record, the uncontroverted relevant timeline is as follows. The administrative hearing before the ALJ was held on June 23, 2008. (R. 27-72). At the conclusion of the hearing, the ALJ asked Plaintiff's attorney if the record was sufficiently developed. (R. 73). Plaintiff's counsel indicated that Plaintiff had appointments within the next five days with two medical treatment providers. (R. 71-72). The ALJ informed the parties that she would leave the record open for four (4) weeks and specifically noted her desire to have a complete medical record. The ALJ stated "I'd hate to have them come in and not be considered if they had something of value to say." (R. 72). The ALJ told Plaintiff's counsel that if he could get an alternative psychological agency to submit something on or before July 23, 2008, she would "be happy to take a look at it." (R. 72-73). The ALJ also addressed whether Plaintiff's counsel would not be able to supplement the record in time, "If you can't get it in, then I'll be happy to make a decision based on the record I have." (*Id.*). The ALJ concluded

---

[4] Counsel for Plaintiff submitted the records from Dr. Shahoud to the Commissioner via the "Electronic Records Express." Although the letter from Plaintiff's counsel is stamped that it was received on May 4, 2009, the Electronics Records Express confirmation reflects that the records were filed on December 4, 2008, before the ALJ issued her decision, but still after the record had closed. For the purpose of this Memorandum Opinion only, the Court finds that the records of Dr. Shahoud were received by the Commissioner on December 4, 2008.

8

the hearing by reminding Plaintiff's counsel that the record would close "as of the end of the business day, July 23, 2008, and a decision will be issued after that." (R. 73-74). As noted herein, the decision of the ALJ was issued on February 9, 2009. (R. 15-26).

Plaintiff contends that the ALJ erred in not addressing Dr. Shahoud's assessment because "these records were submitted *prior* to the ALJ's decision and clearly should have been considered by the ALJ." (R. 16)(emphasis original). However, the record is clear that Plaintiff was specifically apprised that the record would be closed as of the end of the business day on July 23, 2008. (R. 72-73).

The closing of the record is important because "at some point in time, there must be a definite record upon which the [ALJ] can make a decision." *Alper v. Shalala*, 1995 U.S. Dist. LEXIS 4030 at *3 n.5 (E.D.Pa. March 28, 1995) *citing Brown v. Schweiker*, 557 F.Supp. 190, 193-94 (M.D.Fla. 1983). In order to preserve the finality of the record and allow parties one opportunity to present their claims, remands based on new evidence should be narrowly circumscribed. *Alper*, 1995 U.S. Dist. LEXIS 4030 at *3 n. 5. Here, neither party disputes that Dr. Shahoud's assessment was submitted to the ALJ after the record had closed. (Document Nos. 15 & 17). Indeed, Plaintiff concedes that the earliest Dr. Shahoud's assessment was submitted to the ALJ was December 4, 2008, 134 days after the record had closed. (Document No. 17-1).

Our appellate court has instructed that evidence that was not before the ALJ when making his or her decision may <u>not</u> be considered in reviewing the ALJ's decision for substantial evidence. *Matthews v. Apfel*, 239 F.3d 589, 591 (3d Cir. 2001). *See also Jones v. Sullivan*, 945 F.2d 125, 128 (3d Cir. 1991)("A decision may be supported

by substantial evidence even though it could be refuted by other evidence that was not presented to the decision-making body.").

As early as March 26, 2007, in a letter from the Social Security Administration, Plaintiff was informed that "it is important that you give us any new facts as soon as you can." (R. 80). At the close of the administrative hearing, the ALJ expressed that she wanted a complete record and gave Plaintiff a month to supplement the record. (R. 73). Dr. Shahoud's assessment undeniably was not provided to the ALJ prior to the close of the record, and, therefore, pursuant to the instructions from our appellate court, may not be considered by this Court at this time. *Matthews*, 239 F.3d at 591.

The Court's analysis, however, does not stop at this point as the Court must next determine whether Dr. Shadoud's assessment is "new evidence" which would necessitate a remand to the Commissioner.

### 2. Dr. Shahoud's Opinion is Not New Evidence Which Would Necessitate A Remand

The sixth sentence of 42 U.S.C. § 405(g) ("sentence six remand") permits a district court to remand a case to the Commissioner upon a showing of "new evidence" which was not incorporated into the record of the prior proceeding.[5] A plaintiff must prove that new evidence not incorporated into the record of the prior proceeding satisfies the following three requirements: 1) the evidence is new; 2) the evidence is

---

[5] A district court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. §405(g).

material; and 3) plaintiff had good cause for not producing the evidence earlier. *Matthews*, 239 F.3d at 593.

As to the first requirement, evidence is "new" if it "is not duplicative or cumulative." *Wilkins v. Sec'y of Dept. of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). Dr. Shahoud's assessment is duplicative of other evidence of record, specifically, the opinions of Dr. Jonas and Dr. Carusso which the ALJ thoroughly discussed in her decision. (R. 18-19, 23-24). Additionally, a check-box assessment containing work-preclusive mental limitations is already in the record. (R. 280-81, 615-17).

Moreover, evidence is "new" it if was not in existence or not available to the claimant at the time of the administrative hearing. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Since Dr. Shahoud's assessment is not dated, the Court cannot determine whether it was in existence or whether it was available to Plaintiff at the time of the administrative hearing. (R. 615-617). Therefore, the Court finds that Plaintiff has not satisfied the first requirement for a sentence six remand.

The Court also finds that Plaintiff has not satisfied the second requirement for a sentence six remand because Dr. Shahoud's assessment is not "material." Evidence is material if there is a reasonable possibility that it would have changed the ALJ's decision. *Szubak*, 745 F.2d at 833. At the hearing, Plaintiff testified that he was not being treated by a psychiatrist. (R. 52). Where a medical source does not have an ongoing treatment relationship with the claimant, the medical source will be considered an examining source, not a treating source. 20 C.F.R. §§ 404.1502, 416.902.

Dr. Shahoud is not Plaintiff's treating physician for mental impairments, but rather is an examining source. As such, his opinion is not entitled to the special weight of a treating medical source. *Gifford v. Astrue*, 2008 WL 495738 at *2 n. 6 (E.D.Pa. Feb. 25, 2008). Dr. Shahoud's opinion is not consistent with other record medical evidence. Specifically, Dr. Shahoud's opinion is not consistent with the opinion of Dr. Jonas, which the ALJ thoroughly discussed in her decision. (R. 15-26).

Furthermore, Dr. Shahoud's opinion is a form report which the United States Court of Appeals for the Third Circuit has noted is not strong evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)("form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). No treatment records of Dr. Shahoud accompany his assessment to corroborate the checkbox limitations. (R. 615-17).

For all these reasons, the Court finds that there is no reasonable possibility that Dr. Shahoud's assessment would have changed the ALJ's decision. Therefore, the Court finds that Dr. Shahoud's assessment is not "material," and, thus, Plaintiff has not met the second requirement for a sentence six remand. *Szubak*, 745 F.2d at 833.

Finally, under the third requirement of a sentence six remand, a plaintiff has the burden of proving good cause for not submitting the evidence in a timely manner. A plaintiff is required to "act with reasonable promptness" in obtaining evidence. 20 C.F.R. §§ 404.940(b)(1); 416.1540(b)(1).

In this case, the ALJ explicitly stated that she would keep the record open until July 23, 2008, one month following the hearing. (R. 72-73). By his own admission,

Plaintiff did not submit Dr. Shahoud's assessment until December 4, 2008. (Document No. 17-1).

The Court finds that Plaintiff failed to act with reasonable promptness and has not advanced any good cause for his failure to do so. This is an insurmountable defect to a sentence six remand. *Matthews*, 239 F.3d at 593. The United States Court of Appeals for the Third Circuit has recognized that "claimants should generally be afforded only one fair opportunity to demonstrate eligibility for benefits under any of set of circumstances." *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 834 (3d Cir. 1984). Remanding a case for "new evidence" without requiring good cause would "turn the procedure into an informal, end-run method of appealing an adverse ruling" and may encourage claimants to "refrain from introducing all relevant evidence, with the idea of obtaining another bite of the apple." *Id.* Here, Plaintiff has not advanced any reason why he did not "act with reasonable promptness" in failing to submit Dr. Shahoud's assessment before the record closed. 20 C.F.R. §§ 404.940(b)(1); 416.1540(b)(1). Thus, the Court finds that Plaintiff has not met the third requirement for a sentence six remand.

For the aforementioned reasons, the Court finds and rules that Plaintiff has not met his burden of proof for a sentence six remand. *Matthews*, 239 F.3d at 593, 42 U.S.C. § 405(g).

### 3. *The Decision of the ALJ is Supported by Substantial Evidence*

Plaintiff also argues that "the ALJ improperly disregarded competent medical evidence based on her independent review of the record." (Document No. 17, 18-19). Although Plaintiff cites case law for the premise that a treating physician's opinion is

13

afforded great weight, the Court finds that Plaintiff's reliance on these cases is misplaced. The ALJ specifically noted that "no treating physician provided an opinion [that] would indicate a totally disabling condition." (R. 25). Therefore, there was neither a treating physician's opinion in the record that reflected that Plaintiff had a totally disabling condition nor was there a treating physician's opinion which the ALJ disregarded.

### a. Mental Impairments

Plaintiff argues that the ALJ decision is not supported by substantial evidence because "[w]ithout citing any contradictory evidence, the ALJ wholly rejected the opinions of Dr. John Carosso, claiming that his opinions were inconsistent with his own evaluation and the totality of the evidence." (Document No. 17 at 19). The Court finds this argument to be without merit as the ALJ addressed Dr. Carosso's opinion and explained her reasons for rejecting it. (R. 18-19, 23).

John Carosso, Psy.D, was a consultative psychological evaluator who saw Plaintiff on one occasion on February 22, 2007. (R. 274-81). "Dr. Carosso opined that Plaintiff could experience some difficulty negotiating work relationships and would likely have difficulty tolerating stress and pressures associated with day-to-day activities." (*Id.*) The ALJ specifically found that Dr. Carosso's conclusions were not consistent with his own evaluation and were not consistent with the other medical evidence record. (R. 23). For example, Dr. Carosso noted that the "claimant had not received any mental health treatment for his depressive symptoms" and that "the claimant would most likely benefit from ongoing treatment for these conditions." (R. 18). Furthermore, Dr. Carosso reported that Plaintiff's insight appeared to be fair, that there was no history or

14

indication of social difficulty, and that Plaintiff was cooperative and remained engaged throughout the evaluation. (*Id.*). Despite Plaintiff's distraction from tinnitus, Dr. Carosso opined that Plaintiff appeared to remain able to function socially. (*Id.*). Despite these observations, Dr. Carosso concluded that Plaintiff had work-preclusive limitations. (R. 280-81.)

The ALJ also found that Dr. Carosso's opinion was not consistent with the other medical record evidence, specifically the opinion of Edward Jones, Ph.D., a state agency medical consultant, who opined that Plaintiff could perform simple work. When "the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1980).

Dr. Jonas found that Plaintiff was capable of making simple decisions and accepting instruction and concluded that Plaintiff would not be significantly restricted in his ability to function within a work setting and would be able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his mental impairments. (R. 24, 297). It was properly within the role of the ALJ to credit the opinion of Dr. Jonas over that of Dr. Carosso. *Cotter*, 642 F.2d at 705. The Court finds that substantial evidence in the record supports the decision of the ALJ to reject the opinion of Dr. Carosso.

Plaintiff also contends that the ALJ's decision is not supported by substantial evidence because she rejected the opinion of Lanny Detore, Ed.D. (Document No. 17, 18-19). The record reflects that Dr. Detore performed a consultative psychological examination of Plaintiff on June 9, 2009, and diagnosed him with major depression. (R. 606-610). According to Plaintiff, Dr. Detore "opined that his prognosis was poor

15

especially in the context of his ability to function." (Document No. 17, 19). Significantly, however, the Court notes that Dr. Detore examined Plaintiff four (4) months after the decision of the ALJ was issued. (R. 606-610). As Dr. Detore's report was not part of the record before the ALJ, it may not be considered in reviewing the ALJ's decision for substantial evidence. *Matthews*, 239 F.3d at 591.

Finally, Plaintiff argues that "contrary to the ALJ's lay interpretation of the medical records, it should be noted that Dr. Pish, Lindsey's primary care physician, has repeatedly diagnosed him as suffering from an anxiety disorder associated with tinnitus." (Document No. 17, 19). The Court notes that the ALJ did not dispute that Plaintiff had mental impairments. In fact, the ALJ noted that "the medical evidence establishes medically determinable impairments of major depressive disorder; and a generalized anxiety disorder." (R. 25).

Moreover, the ALJ specifically incorporated into Plaintiff's RFC the mental limitations which she found were supported by the record. (R. 24). The ALJ specifically relied on the opinions of Dr. Carosso and Dr. Jonas which both opined that Plaintiff had decreased concentration in finding that Plaintiff has moderate difficulties due to "the distraction of ringing ears." (R. 19). Based on her review of the medical evidence, the ALJ limited Plaintiff to "only routine/repetitive one to three step tasks, with no detailed instruction; and no more than occasional changes in the work setting." (R. 20).

The Court finds that the ALJ's decision with regard to Plaintiff's mental impairments is replete with thorough discussion of Plaintiff's various diagnoses and the medical evidence of record. The ALJ noted that none of Plaintiff's treating doctors provided an opinion which would indicate a totally disabling condition. (R. 25).

The ALJ noted that while Plaintiff self-reports that "in activities of daily living, the claimant has mild restriction. . . [he has] remained able to buy food, pay rent, manage any money he may have, perform self care and personal hygiene without help. " (*Id.*). The ALJ also noted that although Plaintiff denied being capable of many physical activities, those inabilities are due to his tinnitus, not any mental impairment. (*Id.*).

The ALJ also found that while Plaintiff had mild difficulties in social functioning, he was able to maintain his relationship with his live-in fiancée and his parents, continues to get along well with people in authority, and responds well to honest criticism. (*Id.*). The ALJ noted that Plaintiff remained engaged and cooperative throughout his medical evaluations and had not had any social problems prior to his tinnitus. (*Id.*).

The Court further finds that the ALJ's decision is supported by substantial evidence through her discussion of Plaintiff's lack of serious medical treatment for his mental impairments. The ALJ noted that on June 28, 2007, Plaintiff went to Chestnut Ridge Counseling Service and was diagnosed with major depressive disorder, single episode, severe and adjustment disorder with anxiety, chronic. (R. 491-92). Plaintiff signed an "Outpatient Programs Treatment Plan" which indicated that he would meet with his assigned therapist for "1 hour individual therapy sessions at least twice per month" and "attend all scheduled therapy appointments." (R. 494).

However, Plaintiff only attended two counseling sessions at Chestnut Ridge Counseling Service and during those visits Plaintiff objected to taking the prescribed psychotropic medications because he believed the medications might cause ringing in his ears. Plaintiff cancelled a third appointment, scheduled for July 30, 2007 and

rescheduled the appointment to August 6, 2007. Plaintiff then failed to appear for the August 6, 2007 appointment. The ALJ correctly observed that "there are no additional records submitted to demonstrate that the claimant pursued any further mental health treatment after August 6, 2007." (R. 22). On September 8, 2007, Plaintiff advised Dr. Pish, his primary care physician, that he had stopped taking his psychotropic medications previously prescribed. (R. 22).

### b. Physical Impairments

Plaintiff testified that he was not able to perform any type of work because he has lost the ability to hear from the high to mid frequency range in both ears and suffers from tinnitus. He testified that he is not able to sleep because of the tinnitus and is constantly fatigued and has difficulty concentrating. Plaintiff also reported experiencing a spontaneous onset of symptoms, which include the ringing in his ears, a sore throat, headaches, and neck pain. He attributed these symptoms to a tetanus shot he received in October 2006.

The ALJ acknowledged that Plaintiff had severe physical impairments, but found that the medical evidence of record supported her conclusion that Plaintiff was able to perform light work. For example, no treating physician gave Plaintiff any work restrictions or rendered an opinion which indicated totally disabling limitations. Laboratory testing was relatively benign and reflected that Plaintiff had no problems, other than some hearing loss; minimal disc bulging; loss of neck curvature, and temporary neck strain that "should resolve with ongoing treatment. (R. 20, 178).

In sum, the Court finds that the decision of the ALJ thoroughly addressed Plaintiff's mental and physical impairments. (R. 15-26). Furthermore, the ALJ included

in Plaintiff's RFC those mental and physical limitations which were supported by the record. (R. 20). Accordingly, the Court finds that the ALJ's determinations are amply supported by substantial evidence in the record. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d. Cir. 2001).

### IV. Conclusion

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. However, under the applicable standards of review and the current state of the record, this Court must defer to the reasonable findings of the ALJ and her conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that he is able to perform a wide range of light work.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by the Plaintiff.

An appropriate order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL PAUL LINDSEY,<br>　　　Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br>　　　Defendant. | )<br>)<br>)　　09-cv-1505<br>)<br>)<br>)<br>)<br>) |

## ORDER OF COURT

AND NOW, this 14th day of September, 2010, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1. The Motion for Summary Judgment filed by Plaintiff, Michael Paul Lindsey (Document No. 16) is **DENIED**;

2. The Motion for Summary Judgment filed by Defendant, Michael J. Astrue, Commissioner of Social Security (Document No. 14) is **GRANTED;** and

3. The Clerk of Court will docket this case as closed.

　　　　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　s/Terrence F. McVerry
　　　　　　　　　　　　　　　　　　United States District Court Judge

cc:　　Christy Weigand,
　　　　Assistant U.S. Attorney
　　　　christy.wiegand@usdoj.gov

　　　　Gregory T. Kunkel, Esquire
　　　　Kunkel & Fink, LLP
　　　　greg.kunkel@verizon.net